# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4010

_____

Lamont Bounds,        *
               *
     Appellant,      *
               *   Appeal from the United States
   v.             *   District Court for the
               *   Eastern District of Missouri.
Paul K. Delo,        *
               *
     Appellee.      *

_____

Submitted:  June 9, 1998

Filed:  August 21, 1998

_____

Before WOLLMAN and MURPHY, Circuit Judges, and KYLE,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Lamont Bounds appeals from the district court's[2] denial of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  We affirm.

_____

[1]The HONORABLE RICHARD H. KYLE, United States District Judge for the District of Minnesota, sitting by designation.

[2]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

# I.

The following facts are drawn primarily from the decision of the Missouri Court of Appeals in State v. Bounds, 857 S.W.2d 474, 475 (Mo. Ct. App. 1993). In 1990, Bounds was involved in a romantic relationship with a woman named Cynthia Jones. Jones was also involved in an "off and on relationship" with Robert Jackson and was the mother of Jackson's child. In February, Jackson began to suspect that Bounds had been making threatening telephone calls to his home. Because of this suspicion, Jackson and a friend named Alphonso Smith called Bounds and asked him to stop making threatening calls. During this conversation, Bounds threatened to kill Jackson and Jackson's child. A few days later, on February 15, 1990, Bounds issued a similar threat.

Later that evening, Jackson and a friend, Keith Miller, were installing stereo speakers in Jackson's car in a parking lot near Jackson's home. After Jackson and Miller had been working on the speakers for approximately fifteen minutes, Bounds entered the parking lot on foot and approached Jackson's vehicle with his hands concealed in his pockets. Jackson recognized Bounds and began to run away. Miller ran in a different direction. As he was fleeing, Jackson heard a series of gunshots. He continued to run for some distance and eventually returned to his home. A short while later, Jackson returned to the parking lot and found Miller dead of a gunshot wound to the back. Jackson later identified Bounds in a photo lineup.

Three of Cynthia Jones's cousins testified that Jones brought a revolver to their home shortly after the shooting. While at her cousins' home, Jones received a telephone call from Bounds. Jones's cousins refused to allow Bounds to speak to Jones, however, and hung up the phone. Jones then left the house with the revolver still in her possession. It was established that the lethal shot had come from a .38 caliber revolver, but the weapon itself was never recovered.

Following a jury trial, Bounds was convicted of first degree murder and armed criminal action. He was sentenced to life imprisonment on the murder count and to a consecutive term of fifteen years on the armed criminal action court. Bounds then moved for and was denied state postconviction relief pursuant to Mo.S.Ct.R. 29.15. The Missouri Court of Appeals affirmed Bounds's convictions and the denial of his motion for postconviction relief. See Bounds, 857 S.W.2d at 477.

Bounds then filed a petition for writ of habeas corpus, alleging various grounds for relief. The district court denied his petition, but issued a certificate of appealability with respect to certain issues. See 28 U.S.C. § 2253. On appeal, Bounds alleges that: (1) the evidence was insufficient to support his conviction; (2) he was denied due process as the result of evidentiary errors made by the trial court; and (3) his trial counsel was ineffective.

## II.

In determining whether to grant habeas relief, we review the district court's conclusions of law de novo and its findings of fact for clear error. See Knox v. State of Iowa, 131 F.3d 1278, 1280-81 (8th Cir. 1997). State court findings of fact are generally presumed correct under 28 U.S.C. § 2254(d) (1994).[3] See id. at 1281. In addition, the Supreme Court has recognized that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle

---

[3]The standards under which federal habeas courts review state court determinations of fact were altered by the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub.L. No. 104-132, 110 Stat. 1214, 1218-21 (April 24, 1996). These changes, however, do not apply retroactively to cases filed prior to the AEDPA's effective date, as was Bounds's. See Lindh v. Murphy, 117 S. Ct. 2059, 2068 (1997); Tiedeman v Benson, 122 F.3d 518, 521 (8th Cir. 1997); Henderson v. Norris, 118 F.3d 1283, 1288 n.2 (8th Cir. 1997), cert. denied, 118 S. Ct. 1081 (1998); Carter v. Hopkins, No. 97-3493, slip. op. at 5 n.6 (8th Cir. August 11, 1998).

v. McGuire, 502 U.S. 62, 67-68 (1991). Instead, our review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68; see also 28 U.S.C. § 2241. Determinations of state law made by the Missouri Court of Appeals are binding. See Crump v. Caspari, 116 F.3d 326, 327 (8th Cir. 1997).

## A.

Bounds first asserts that the state's evidence was insufficient to sustain his convictions. The Due Process Clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970); see also United States v. Wright, 119 F.3d 630, 633 (8th Cir. 1997); Neal v. Acevedo, 114 F.3d 803, 807 (8th Cir. 1997). Thus, in reviewing the sufficiency of the evidence to support a guilty verdict, our task is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also United States v. Bass, 121 F.3d 1218, 1220 (8th Cir. 1997).

The elements of state law crimes are defined by state law. See Flieger v. Delo, 16 F.3d 878, 883 (8th Cir. 1994). Under Missouri law, "[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020.1.[4] In addition, the Missouri Code provides that "any person who commits any felony under the laws of this state

---

[4]Under Mo. Rev. Stat. § 562.016.3, "[a] person 'acts knowingly' . . . [w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." Deliberation is defined as "cool reflection for any length of time no matter how brief." Mo. Rev. Stat. § 565.002(3).

by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action." Mo. Rev. Stat. § 571.015.1. The jury was properly instructed as to the elements of each offense.

We conclude that the state introduced ample evidence of Bounds's guilt. Although no one witnessed the actual shooting and no weapon was ever recovered, Jackson's testimony established that Bounds had made prior threats, that Bounds was at the scene of the murder, and that Jackson heard gunshots almost immediately after he began to flee. Further testimony indicated that, shortly after the murder, Bounds's paramour was in possession of a weapon of the same general type as that used in the shooting. Finally, no evidence indicated that anyone besides Bounds was present at the scene of the crime. Although this evidence is largely circumstantial, it is not lacking in probative force, for under Missouri law a jury may infer the elements of first degree murder "from indirect evidence and the circumstances surrounding the murder." Flieger, 16 F.3d at 883. We therefore conclude that the evidence, when viewed in the light most favorable to the prosecution, was sufficient to enable a rational trier of fact to find the essential elements of the charged crimes beyond a reasonable doubt. See Jackson, 443 U.S. at 319.

**B.**

Bounds next contends that a series of evidentiary errors committed by the trial court deprived him of due process. Specifically, he argues that the trial court erred when it: (1) allowed the state to impeach the credibility of Jones's mother, who had testified on Bounds's behalf, by exposing the fact that her daughter had been indicted for tampering with physical evidence in connection with the case; (2) allowed Bounds to cross-examine Jackson regarding his relationship with Jones prior to the murder but prohibited any inquiry about subsequent relations; and (3) allowed testimony that Jones was in possession of a gun when she visited her cousins' home on the night of the murder.

-5-

Bounds's contentions are, for the most part, invitations to reexamine evidentiary rulings made by the trial court and affirmed by the Missouri Court of Appeals. Because these issues involve questions of state law, we are not free to do so. See Estelle, 502 U.S. at 67-68. The only question for our review is whether the evidentiary rulings constituted a constitutional violation. "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996), cert. denied, 117 S. Ct. 1439 (1997); see also Crump, 116 F.3d at 327. The evidentiary rulings complained of here fall far short of reaching such level, if indeed they were in any respect erroneous. We therefore conclude that Bounds has failed to demonstrate a due process violation.

## C.

Bounds's final argument is that his trial counsel's failure to object to the testimony of Jones's cousins or to the state's cross-examination of Jones's mother constituted ineffective assistance. To succeed on an ineffective assistance of counsel claim, a petitioner must show that his attorney's performance was deficient and that the deficiency prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997), cert. denied, 117 S. Ct. 2488 (1997). Assuming that counsel should have objected to the now-challenged testimony, we are satisfied that there is no reasonable probability that the result of the trial would have been different had counsel successfully objected to the testimony. Thus, Bounds has failed to establish that he was prejudiced by counsel's alleged deficient performance. See Strickland, 466 U.S. at 694.

Bounds also contends that his counsel was ineffective because she failed to advise him that he had the right to testify. The state postconviction court found to the

contrary, however, and we see nothing in the record that would call that finding into question.  <u>See</u> 28 U.S.C. § 2254(d).

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.